**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 08 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MICHAEL SHERIDAN, | No. 13-35999 |
| Plaintiff - Appellant, | D.C. No. 1:10-cv-00359-EJL |
| v. | |
| BRENT REINKE; CMS, DBA Corizon, Inc.; PHILIP VALDEZ; ICC-CCA; NORMA RODRIGUEZ, | MEMORANDUM[*] |
| Defendants - Appellees. | |

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted April 8, 2015
Seattle, Washington

Before: FERNANDEZ, HAWKINS, and CALLAHAN, Circuit Judges.

Michael Sheridan ("Sheridan"), an inmate with the Idaho Department of

Corrections (the "IDOC"), appeals the adverse grant of summary judgment on his 42

U.S.C. § 1983 claims against Brent Reinke, the IDOC Director; Corizon, LLC

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

("Corizon"), the medical care provider for IDOC prisons; Corrections Corporation of America ("CCA"), the private entity responsible for operating the Idaho Correctional Center ("ICC"); Philip Valdez, the former ICC warden; and Norma Rodriguez, the former ICC unit manager. Sheridan also appeals several discovery orders. We affirm.

Although error to grant summary judgment to Reinke solely on the basis that he was not personally involved in the treatment of Sheridan's post-traumatic stress disorder ("PTSD"), *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013), any such error was harmless, as Sheridan failed to show that Reinke engaged in unlawful conduct causally connected to a deprivation of Sheridan's constitutional rights, *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013).

Sheridan also failed to demonstrate that he was deprived of constitutionally adequate care for his PTSD while at the Idaho State Correctional Institution ("ISCI"). Sheridan testified that ISCI, in conjunction with the Veterans Administration, offered weekly group therapy sessions for inmates suffering from PTSD and that he attended several of those sessions. Sheridan also met with a licensed mental health clinician when he arrived at ISCI and again approximately one year later. Corizon presented an expert affidavit opining that group therapy and routine clinician follow up appointments were medically acceptable forms of treatment for Sheridan's PTSD. Sheridan's own, uncorroborated testimony that he needed individualized

psychotherapy administered by a "Ph.D psychologist" is insufficient to create a question of fact as to whether group therapy and clinician appointments were medically acceptable. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Instead, his testimony demonstrates a preference in treatment, which is not a cognizable Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 107–08 (1976).[1]

The district court was not required to evaluate a medical care claim against CCA at the summary judgment phase because that claim was properly dismissed in the initial screening of Sheridan's complaint and amended complaint. *Id.* (affirming dismissal of pro se plaintiff's complaint because allegations that prison medical staff should have performed additional tests and offered additional treatment did not state Eighth Amendment claim).

Sheridan concedes that he failed to present sufficient evidence of an objective risk of substantial harm to withstand summary judgment on his failure-to-protect claim against CCA, Valdez, and Rodriguez (collectively the "CCA Defendants"). Sheridan contends only that alleged discovery abuses prevented him from obtaining evidence necessary to oppose the CCA Defendants' motion. Because we find the

---

[1] In the alternative, Sheridan concedes that he never filed a grievance during his time at ISCI. Thus, Sheridan failed to exhaust the administrative remedies for his claim against Corizon. *See* 42 U.S.C. § 1997e(a). Sheridan's subjective belief that the use of the grievance system would be futile, without more, does not excuse his failure to exhaust. *See Sapp v. Kimbrell*, 623 F.3d 813, 827 (9th Cir. 2010).

district court did not abuse its discretion in declining to reopen discovery, we affirm summary judgment on Sheridan's failure-to-protect claim.

To reopen discovery, Sheridan was required to show good cause, which in turn requires a showing of diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992). Sheridan's failure to diligently pursue discovery is demonstrated in the record and supports the refusal to reopen discovery. *Id.* ("good cause" inquiry focuses primarily on diligence of requesting party); *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1173–74 (9th Cir. 2007). Furthermore, the district court fairly balanced CCA's failure to disclose the so-called Higgins Report with Sheridan's failure to diligently pursue discovery by permitting Sheridan to submit the Higgins Report as a supplement to his opposition to the CCA Defendants' motion.

On appeal, Sheridan argues that the Defendants withheld other relevant evidence, including an Independent Monitor Final Action Plan (the "Plan"), a disposition holding CCA in civil contempt (the "Contempt Order"), and a Special Master's Report (the "*Balla* Report") filed in two other prisoner lawsuits involving conditions at ICC and ISCI. The Plan and the Contempt Order are not relevant to Sheridan's discovery arguments, given that neither document existed at the time Sheridan filed his motion to reopen discovery in this case. To the extent that Reinke or Corizon should have disclosed the *Balla* Report, their failure to do so did not

4

prejudice Sheridan.  Sheridan discussed and cited to the *Balla* Report in an August 22, 2012, letter filed with the court, demonstrating that Sheridan had access to the report many months before summary judgment briefing.  These additional documents do not indicate that the district court abused its discretion in declining to reopen discovery. *Cf. Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004) (pro se plaintiff should be given extension for discovery if "it is clear that additional relevant evidence remained to be discovered").

Finally, the district court did not abuse its discretion by bifurcating the proceedings against Corizon.  The bifurcation order applied only to Corizon and simply postponed discovery on Corizon's policies until after the parties completed discovery and summary judgment on the issue of inadequate mental health care. Discovery on Corizon's policies would be unnecessary if Sheridan did not prove inadequate care.  The district court was permitted to limit discovery to serve judicial economy, avoid unnecessary discovery, and protect against the unnecessary disclosure of trade secrets.  FED. R. CIV. P. 26(c); *Johnson*, 975 F.2d at 607 (district court has "broad discretion in supervising the pretrial phase of litigation" (internal quotation marks omitted)).

All pending motions are denied as moot.

**AFFIRMED.**